UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **CARL E. THOMAS**, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **1:09-cv-808-SEB-JMS** |
| vs. ) | |
| ) | |
| **MICHAEL ASTRUE**, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ENTRY

Carl E. Thomas seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, et seq. Our standard of review is deferential. To be eligible for SSI, a claimant must prove that he or she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of

symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in the Social Security regulations is used to determine disability status. <u>Briscoe ex rel. Taylor v. Barnhart</u>, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

<u>Id.</u> The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. <u>Id.</u> at 352. If a claimant has only exertional limitations, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate a claimant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If a claimant has non-exertional limitations or exertional limitations that restrict the full range of employment opportunities at his RFC level, then the grids may not be used and a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the claimant's particular vocational and medical characteristics. <u>Id.</u>; <u>Lee v. Sullivan</u>, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. <u>Kendrick v. Shalala</u>, 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It

2

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938)). In reviewing the decision of the ALJ, we cannot engage in our own analysis of

> whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004). Carradine v. Barnhart, 360 F.3d 751, 758 (7th Cir. 2004).

### *Background*

Thomas filed his application for SSI on January 27, 2005 alleging disability dating back to March 30, 1998 due to degenerative disc disease and right knee trauma. His application was denied initially and upon reconsideration. His request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was held on April 11, 2008. Thomas appeared, accompanied by his attorney Melissa Davidson. In addition to Thomas, Constance Brown, a vocational expert, appeared and testified. The ALJ issued a decision denying benefits on September 2, 2008. On May 22, 2009, the Appeals Council denied Thomas's request for review, making the ALJ's decision final. See Getch v. Astrue, 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,

irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

At the first step in the sequential process the ALJ found that Thomas had not engaged in substantial gainful activity since January 27, 2005, the application date. At the second step the ALJ found that Thomas has the following severe impairments: degenerative disc disease and residuals of right knee trauma. At the third step in the process the ALJ found that Thomas does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1.

Additionally, the ALJ found that Thomas has the RFC to lift, carry, push/pull twenty pounds occasionally and ten pounds frequently. He found that Thomas can stand and walk two hours in an eight hour workday at intervals of ten minutes and can sit for six hours during an eight-hour workday. The ALJ noted that Thomas must have the opportunity to change positions from sitting to standing briefly every thirty minutes. Regarding his movement capacity, the ALJ found that Thomas can occasionally stoop but should avoid crouching, crawling, kneeling, balancing and climbing. Concerning his work environment, the ALJ found that Thomas should not work in cold temperatures, should not work around hazards such as unprotected heights or unguarded moving machinery and should not walk on wet, uneven surfaces. The ALJ also found that Thomas should not climb ladders, scaffolds or ropes and his work should involve routine, repetitive tasks with no unusually high time or productions quotas.

At the fourth step in the process, the ALJ found that Thomas is unable to perform any past relevant work. At the fifth step in the process, however, the ALJ found that after considering Thomas's age, education, work experience and RFC, there are jobs that exist in

4

significant numbers in the national economy that he can perform.  In addition, the ALJ noted that transferability of job skills is not an issue in this case because Thomas's past relevant work is unskilled.  He also noted that Thomas has a limited education and is able to communicate in English and that Thomas has not been under disability, as defined by the Social Security Act, since January 27, 2005, the date the application was filed.  With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Thomas had not been under a disability as defined in the Act from March 30, 1998, through the date of the ALJ's decision.

Thomas only challenges the ALJ's finding at step three regarding his disability under Listing 1.04(A).  In order to classify as disabled under Listing 1.04(A), a claimant

> must show a disorder of the spine (such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root or the spinal cord, and: A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine.)

20 C.F.R. 404, Subpart P, Appendix 1, Section 1.04.

*Evidence*

Because Thomas challenges the ALJ's findings solely at step three of the sequential process, we address only the evidence pertaining to that issue.[1]  In February 2002, Thomas saw

---

[1] In his denial the ALJ also found that Thomas did not meet the listing requirements for Listing 1.04(C) due to his ability to ambulate effectively. (R. 21-22).  Thomas only challenges the ALJ's denial of benefits under Listing 1.04(A), thus we need not address the ALJ's findings
(continued...)

Victor Collier, M.D. for complaints for lumbar back pain. At that time he stated that he worked part time delivering firewood, and Dr. Collier prescribed Thomas Vicodin and Flexeril. (R. 216, 325-326.) In April 2002 x-rays of Thomas's back indicated a normal lumbar spine. (R. 210.) In August 2002 Thomas told Dr. Collier that his pain was under control with Vicodin. (R. 219, 318.)

Thomas next visited Rajesh Gulati, M.D. in March 2003 for continued chronic lower back pain. Dr. Gulati noted that Thomas, "denies any symptoms of numbness or tingling in his lower extremities." (R. 220.) In August 2003, Thomas reported that he was working in construction. (R. 221.) The following June, Thomas returned to Dr. Collier and again did not complain of any leg weakness or numbness. (R. 293.)

Thomas changed doctors in January 2005 and Hachim Elmasry, M.D. became Thomas's primary care physician. After neurological testing, Dr. Elmasry noted that Thomas's sensation in his extremities was normal. (R. 289-290.) Similar tests in February 2005 revealed normal sensation as well. (R. 225.) One month later, Thomas underwent an examination with M. Majid, M.D. a state agency doctor. Dr. Majid noted that Thomas had pain during range of motion tests; tenderness of the lumbar spine; muscle weakness, atrophy, and stiffness of the right leg; and diminished sensation to touch in his left arm and right leg. (R. 134-135.) It was also during this visit that Dr. Majid stated that Thomas, "[m]ay not be able to perform work or engage in gainful employment." (R. 135).

---

[1](...continued)
related to Listing 1.06(C).

The following month, A.M. Dobson, M.D., a second physician from the state agency, reviewed the examination report from Thomas's March visit with Dr. Majid.  Based on Dr. Majid's findings, Dr. Dobson opined that Thomas could frequently carry ten pounds, occasionally carry twenty pounds, could stand and/or walk around two hours in an eight-hour workday, could sit roughly six hours in an eight-hour workday, engage in unlimited pushing and pulling, occasionally stoop, kneel, and crouch, but never climb or crawl.  (R. 124-125.)

Subsequent visits with Dr. Elmasry in May 2005 as well as August 2005 produced test results indicating  normal neurological and sensation functions for Thomas.  (R. 226-28, 276-77, 279-80.)  In September 2005, B.H.Whitley, M.D., another reviewing state agency physician, reviewed Dr. Majid's report and noted that Dr. Majid's limitations of Thomas's activities were not specific.  (R. 107.)  Dr. Whitley also noted the same functional restrictions found in Dr. Dobson's report. (R. 102-03.)

Thomas underwent multiple tests in 2006 and 2007 that each yielded normal sensation results.  For example, In January 2006, Dr. Elmasry found normal results after conducting both neurological tests and sensation tests.  (R. 228-29.)  In April 2006, Thomas was evaluated by Robert Pascuzzi, M.D. for complaints of neuropathic pain.  (R. 230.)  Dr. Pascuzzi found normal results after performing a nerve conduction test and subsequently scheduled a needle examination.  (R. 230.)  The follow up needle test, performed in May 2006, returned normal results and showed "no evidence of peripheral neuropathy."  (R. 231.)  In August 2006 and again in April 2007, Dr. Elmasry noted normal findings for neurological and sensation tests.  (R. 231-32., 233-34, 263-64.)

*Discussion*

The evidence on record of Thomas's visits to various doctors and their reports of normal sensation and neurological function on all but one occasion provided substantial evidence for the ALJ to find that Thomas does not meet Listing 1.04(A).  Furthermore, at his hearing in April 2008, Thomas himself testified before the ALJ that he had not experienced lack of sensation or numbness in either leg[2].  (R. 340.)  Sensory loss is a requirement under Listing 1.04(A). Accordingly, we find that the medical evidence on record supplemented by Thomas's own testimony provided the ALJ with substantial evidence to conclude that Thomas did not meet Listing 1.04(A).

However, Thomas also contends that the ALJ's failure to address the possibility that his impairments may be medically equivalent to a Listing under section 1.04(A) constitutes a legal error.  In order to qualify for disability, one's impairments must meet or medically equal a listing.  20 C.F.R. 404.1505(a).  Thomas claims that although he did not meet the listing requirements for Listing 1.04(A), he medically equaled the listing and the ALJ disregarded that possibility.  For cases in front of an ALJ, the responsibility for deciding medical equivalence rests with the ALJ.  20 C.F.R. 404.1526(e).  When necessary, an ALJ must call upon a medical expert to provide an informed basis for determining whether someone is disabled.  Green v. Apfel, 204 F.3d 780, 781 (7th Cir. 2000).  Thomas argues that under Barnett v. Barnhart, 381 F.3d 664 (7th Cir. 2004) and Wadsworth v. Astrue, 2008 WL 2857326 (S.D. Ind. July 28, 2008),

---

[2]In January 2005 Thomas complained of numbness in his left forearm, but Dr. Elmasry noted that Thomas had previously undergone extensive surgery on that same arm after suffering an almost complete amputation of the limb.  (R. 223.)  Because there is no evidence in the record that the reported numbness was related to his back problems as opposed to the prior arm surgery, this fact does not affect our analysis.

this court is obliged to remand the case on the basis of the ALJ's failure to consider an expert's opinion as to whether the claimant's impairments medically equal a listing. Thomas's case, however, is distinguishable from that of Barnett and Wadsworth in light of the otherwise diligent work of the ALJ in deciding his case.

In Barnett, the Court of Appeals found that, in addition to failing to consult an expert, the ALJ improperly disregarded medical records and testimony, and also did not adequately explain how he reached his conclusions. Not so here. In Wadsworth, this court found that the ALJ erroneously disregarded statements in the record that carried weight toward the claimant's credibility. Not so here. The ALJ in the case at bar thoroughly investigated the record of Thomas's medical examinations by his primary care physician and state agency physicians and found substantial evidence showing that he was not disabled under Listing 1.04(A). The ALJ even went so far as to investigate if Thomas was disabled under Listing 1.04(C) due to his difficulty ambulating. The ALJ carefully weighed the evidence and testimony in deciding Thomas's listing and his RFC, as shown by his nearly four page single-spaced analysis in his report. (R. 21-25.) Thus, Thomas's case is distinguishable from Barnett and Wadsworth, and this is clearly not a situation for remand due to insufficient explanation in the ALJ's denial. Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002).

The circumstances of Thomas's case are more comparable to Bush v. Astrue, 2010 WL 76454 (S.D. Ind. Jan. 4, 2010), where this court found that an ALJ's failure to consult a medical expert specifically to determine the medical equivalence of a claimant's impairments was not a legal error that necessitated remand. In Bush, the ALJ took medical evidence, testimony, and RFC assessments into account in making his decision. The court found that "[t]he ALJ carefully

9

considered the medical evidence in making his findings. Therefore, remand to obtain medical expert testimony is not necessary." Id. at 4. The facts in Thomas's case and the information taken into account by the ALJ are very similar. In addition to the testimony at the hearing, the ALJ considered all of the evidence including nearly five years of medical records, multiple state agency physicians' opinions, and RFC assessments. He sufficiently explained his findings and the reasoning for them in his denial and he did not erroneously discount or disregard information in the record. For these reasons, we find that the ALJ did not commit legal error by failing to summon a medical expert to determining equivalence; thus remand to obtain additional expert medical testimony is not necessary.

## *Conclusion*

Because we find that the ALJ's decision is supported by substantial evidence and free of legal error, we AFFIRM the Commissioner's decision.

**IT IS SO ORDERED.**

Date: 06/11/2010

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov